**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**HELENA DIVISION**

HECTOR LUIS MARQUEZ-FIGUEROA
REG. #23474-069                                                                                                       PETITIONER

VS.                                              2:05CV00170 JMM/JTR

LINDA SANDERS, Warden, FCI,
Forrest City, Arkansas                                                                                          RESPONDENT

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge James M. Moody. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

  1.  Why the record made before the Magistrate Judge is inadequate.

  2.  Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

  3.  The details of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

  Clerk, United States District Court
  Eastern District of Arkansas
  600 West Capitol Avenue, Suite 402
  Little Rock, AR 72201-3325

## I. Introduction

Petitioner, who is currently incarcerated at the Federal Correctional Institute located in Forrest City, Arkansas, has filed a Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241. (Docket entry #1.) Respondent has filed a Response (docket entry #7), and the issues are now joined and ready for disposition. For the reasons set forth herein, the Court recommends that the Petition be granted.

## II. Background

In this habeas action, Petitioner challenges a recent rule of the Federal Bureau of Prisons ("BOP"), which took effect on February 14, 2005 (the "February 2005 Rule"), limiting the duration of a prisoner's confinement in a community corrections center ("CCC") to "the last ten percent of

the prison sentence being served, not to exceed six months." 28 C.F.R. § 570.21(a). Before addressing the merits of Petitioner's claim, it is important to understand the origin of the February 2005 Rule and the specific facts relevant to Petitioner's case.

**A.      History of the BOP's December 2002 Policy**

For a number of years, BOP policy allowed prisoners to serve the last six months, or more, of their sentences in a CCC, regardless of the ratio of their CCC time to the total length of their sentences.[1]  *See* BOP Program Statement 7310.04 at 4.  This was commonly referred to as "back end" entry into a CCC.[2]  *See Adler v. Menifee*, 293 F. Supp. 2d 363, 365 (S.D.N.Y. 2003).

In 2002, the BOP began to question whether its CCC policy violated 18 U.S.C. §§ 3621(b) and 3624(c).  In pertinent part, § 3621(b) provides that:

> Place of imprisonment. – The Bureau of Prisons shall designate the place of the prisoner's *imprisonment*.  The Bureau may designate any available *penal or correctional facility* that meets minimum standards of health and habitability established by the Bureau . . . .  The Bureau may *at any time*, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. . . .

(Emphasis added.)  Additionally, § 3624(c) provides, in pertinent part, that:

> Pre-release custody. – The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, *not to exceed six months*, of the last 10 per centum of the term to be served under conditions that

---

[1] As to the length of CCC placement, the policy provided that: "An inmate may be referred up to 180 days, with placement beyond 180 days highly unusual, and only possible with extraordinary justification."  *See* BOP Program Statement 7310.04 at 8.

[2] During this same time period, the BOP often complied with a sentencing judge's recommendation (based upon the nature of the crime, the length of the sentence, and the prisoner's security risk level) that a prisoner serve his entire sentence in a CCC.  *See Adler,* 293 F. Supp. 2d at 365; *see also* U.S. Department of Justice, Office of Legal Counsel, December 13, 2002 Memorandum.)  This is called "front end" entry into a CCC.  *Id.*  The case at hand only involves "back end" entry into a CCC.

>will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided in this subsection *may* be used to place a prisoner in home confinement . . . .

(Emphasis added). At first blush, it appears that these provisions conflict because § 3621(b) seems to allow CCC placement "at any time" and for any duration, while § 3624(c) appears to limit CCC placement for a period "not to exceed" the last six months or ten percent of a prisoner's sentence.

On December 13, 2002, the Office of Legal Counsel for the United States Department of Justice ("OLC") issued a memorandum opinion stating that the authority conferred under 18 U.S.C. § 3624(c) to transfer a prisoner to community confinement "is clearly limited to a period 'not to exceed six months, of the last 10 per centum of the time to be served,' 18 [U.S.C.] § 3624[c], and we see no basis for disregarding this time limitation." OLC Mem. Op. for Dep. Att. Gen., Re: Bureau of Prisons Practice of Placing in Community Confinement Certain Offenders Who Have Received Sentences of Imprisonment, at 7 n. 6 (Dec. 13, 2002).

The United States Attorney General adopted the OLC's position in a memorandum dated December 16, 2002, from Larry D. Thompson, Deputy Attorney General, to Kathleen Hawk Sawyer, who was then the BOP Director. Dep. Att. Gen. Memo., Community Corrections Center Placement of Offenders Sentenced to Terms of Imprisonment Under Federal Sentencing Guidelines (Dec. 16, 2002). Shortly thereafter, the BOP adopted a new back-end entry policy limiting the duration of confinement in a CCC to "the last 10% of the prison sentence, not to exceed six months" (hereinafter referred to as the "December 2002 Policy"). BOP Memo. for Chief Executive Officers, at 2 (Dec. 20, 2002).

The BOP's December 2002 Policy resulted in numerous legal challenges from federal prisoners. In *Elwood v. Jeter*, No. 2:03CV00202 JTR, slip op. at 5-9 (E.D. Ark. May 5, 2004), this

Court upheld the BOP's December 2002 Policy governing the duration of a prisoner's placement in a CCC. On appeal, the Eighth Circuit *reversed*. *See Elwood v. Jeter*, 386 F.3d 842, 846-47 (8th Cir. 2004). Specifically, the Court held that: (1) "§ 3621(b) gives the BOP the *discretion* to transfer prisoners to CCC's at *any time* during their incarceration"; and (2) § 3624(c) *requires* "the BOP . . . to place prisoners in 'conditions that will afford [them] a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community' during a reasonable part of the last ten percent of the prisoner's term, to the extent practicable." *Id.* (quoting § 3624(c)) (emphasis added). However, the Court clarified that the duty imposed upon the BOP under § 3624(c) "shall not extend beyond the last six months of the prisoner's sentence."[3] *Id.* Thus, the Eighth Circuit concluded that the BOP's December 2002 Policy limiting a prisoner's CCC confinement to "the last 10% of the prisoner's sentence, not to exceed six months" violated § 3621(b) and § 3624(c), which together required the BOP to exercise its discretion, on a case by case basis, in deciding when to place a prisoner in CCC confinement in order to afford the prisoner "a reasonable opportunity to adjust to and prepare for . . . re-entry into the community."

---

[3]In reaching this decision, the Court emphasized that:
> . . . 18 U.S.C. § 3624(c) does not require placement in a CCC. It only obligates the BOP to facilitate the prisoner's transition from the prison system. Under § 3621(b), the BOP may place a prisoner in a CCC for six months, or more. Under § 3624(c) the BOP must formulate a plan of pre-release conditions. This plan may include CCC placement, home confinement, drug or alcohol treatment, or any other plan that meets the obligation of a plan that addresses the prisoner's re-entry into the community. Likewise, the obligation is qualified by the phrase "to the extent practicable." Security concerns or space limitations in a CCC near the prisoner's home are among the factors that may make it impractical to transfer a prisoner to a CCC for all or even part of the transition period.

*Id.*

**B.     The February 2005 Rule**

In response to successful challenges to the December 2002 Policy, the BOP proposed a new rule under the Administrative Procedure Act's notice-and-comment procedure. *See* Community Confinement, Proposed Rule, 69 Fed. Reg. 51213-01 (Aug. 18, 2004). Because various courts held that the BOP was required to exercise some discretion under § 3621(b) in placing prisoners in CCCs, the BOP proposed to "exercise its discretion categorically to limit inmates' community confinement to the last ten percent of the prison sentence being served, not to exceed six months." *Id.* The BOP further explained that "[t]his categorical exercise of discretion is permissible based on the Supreme Court's recognition that, even when a statutory scheme requires individualized determinations, the decisionmaker has authority to rely on rulemaking to resolve certain issues of general applicability (unless Congress clearly expresses an intent to withhold that authority)." *Id.* (citing *Lopez v. Davis*, 531 U.S. 230, 243-44 (2001)). The proposed rule became effective on February 14, 2005. *See* Community Confinement, Final Rule, 70 Fed. Reg. 1659-01 (Jan. 10, 2005).[4]

---

[4]The February 2005 Rule is codified as follows:
> What is the purpose of this subpart?
> (a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
> (b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.
> When will the Bureau designate inmates to community confinement?
> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.
> (b) We may exceed these time-frames only when specific Bureau

**C.     Facts Relevant to Petitioner's Case**

On December 9, 2003, Petitioner pleaded guilty in the District of Puerto Rico to conspiracy to obstruct justice, making a false declaration, and suborning perjury. (Docket entry #1, p. 3.) Petitioner was sentenced to 18 months in prison. *Id.* Consistent with the February 2005 Rule, Petitioner has been informed by BOP that he is only eligible for approximately one month of CCC placement. In his habeas Petition, Petitioner argues that, under 18 U.S.C. § 3621(b), he is entitled to up to six months of CCC placement. (Docket entry #1, Ex. D.) Petitioner contends that Respondent's categorical exercise of placement discretion, pursuant to the February 2005 Rule, conflicts with the placement factors set forth in 18 U.S.C. § 3621(b).

Respondent admits that Petitioner's CCC placement was based on its "categorical exercise of discretion" as codified in the February 2005 Rule, rather than on any individualized exercise of discretion regarding the particular circumstances surrounding Petitioner's incarceration. However, Respondent argues that, because the February 2005 Rule is a valid exercise of BOP's discretion under 18 U.S.C. § 3621(b) and *Elwood*, Petitioner's habeas petition should be dismissed. (Docket entry #7.)

### III.  Discussion

Like the December 2002 Policy that the Eighth Circuit invalidated in *Elwood*, the February 2005 Rule limits CCC placement to the last ten percent of the prison sentence being served, not to

---

> programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. 4046(c)).

28 C.F.R. §§ 570.20-.21 (2005).

exceed six months; with the only exception being when a specific BOP program allows a greater period of community confinement pursuant to separate statutory authority. See 28 C.F.R. §§ 570.20-.21 (2005). Not surprisingly, the BOP's adoption of the February 2005 Rule has led to it being challenged in numerous federal habeas actions.

Several courts, including judges in this district, have held that the Rule is invalid. In doing so, these judges have noted that § 3621(b) *requires* that the BOP consider the placement factors set forth in the statute[5] prior to arriving at a determination regarding the appropriate facility for a given inmate, and that the February 2005 Rule fails to consider those factors with respect to individual placement decisions. In *Fults v. Sanders*, E.D. Ark. No. 2:05CV00091 GH/HLJ, Docket entry #9, the Honorable George Howard, Jr., United States District Court Judge, held that the Rule was neither a proper exercise of discretion, nor proper rulemaking:

> This court does not doubt the BOP, in implementing the statutes governing placement of inmates, can "rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority." *Lopez v. Davis*, 531 U.S. 230, 244 (2001). In *Lopez*, the Court upheld a BOP regulation excluding offenders who had possessed a firearm during their offense from participating in the early release program established under 18 U.S.C. § 3621(e)(2)(B). "The Bureau is not required continually to revisit 'issues that may be established fairly and efficiently in a single rulemaking proceed[ing] . . . . The Bureau reasonably concluded that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early-release decision[.]'" *Id.*
>
> As a District Court in the Eastern District of New York has observed, however, "[h]ere, rather than merely delineate the boundaries of its discretion consistent with congressional intent as in *Lopez*, the February 2005 Rule removes all discretion in all cases in determining whether to transfer an inmate to a CCC at any time prior to the last ten percent of the inmate's sentence. While BOP has the authority to clarify

---

[5]These factors include, among other things, the nature and circumstances of the offense and the history and characteristics of the prisoner. 18 U.S.C. § 3621(b).

> the contours of its discretionary authority as it relates to certain classes of issues, this court is unconvinced that BOP may categorically remove its entire ability to exercise its discretion, where, as here, the enabling statute provides specific factors relevant to whether CCC placement may be appropriate prior to the last ten percent of a prisoner's sentence.
>
> * * *
>
> Although Section 3621(b) sets forth several factors intended to inform BOP's decision-making with regard to CCC placement prior to the last ten percent of an inmate's sentence, unlike the rule promulgated in *Lopez*, the February 2005 Rule in no way furthers or interprets these factors. *Pimentel v. Gonzalez*, [367 F. Supp. 2d 365, 374-75 (E.D.N.Y. 2005)]."
>
> The court [in *Pimentel*] further found the legislative history for § 3621(b) "calls on the agency to consider" the factors set forth in the statute and concluded that the "February 2005 Rule fails because it in no way relates to or considers these factors with regard to transfer to a CCC." [footnote omitted.] This court agrees. While the BOP labeled the rule a "categorical exercise of discretion" it did not exercise its discretion at all. It merely repackaged the December 2002 blanket rule that was rejected in *Elwood*."

*Fults*, E.D. Ark. No. 2:05CV00091 GH/HLJ, Docket entry #5 , p. 6-8.

Outside of this district, other courts have also invalidated the February 2005 Rule. *See United States v. Paige*, 369 F. Supp. 2d 1257, 1262 (D. Mont. 2005) (February 2005 rule "ignores" the § 3621 factors); *Cook v. Gonzales*, 2005 WL 773956, *3 (D. Or. April 5, 2005) ("[February 2005 Rule] simply posits a uniform rule that entirely ignores Section 3621(b)'s command"); *Drew v. Menifee*, 2005 WL 525449, *6 (S.D.N.Y. March 4, 2005) ("Although the [February 2005 Rule] will, no doubt, result in uniformity of treatment, it achieves that end only by ignoring the factors the BOP 'is specifically required' to consider").

Other courts, however, have upheld the validity of the February 2005 Rule. *See Yip v. Fed. Bureau of Prisons*, 363 F. Supp. 2d 548, 551-52 (E.D.N.Y. 2005) (rejecting argument that February

2005 Rule is contrary to 18 U.S.C. § 3621(b) and concluding that the BOP is "authorized to create categorical rules even where a statute requires individualized determinations"); *Defrancesco v. Fed. Bureau of Prisons*, 2005 WL 1712020, *9  (D.N.J. July 20, 2005) (concluding that "the February 2005 policy represents a reasonable interpretation of § 3621(b)" and that "Congress did not express a clear intent to limit the BOP's authority to regulate its discretion under § 3621(b) by adopting categorical rules such as the February 2005 policy, even though § 3621(b) provides for individualized determinations"); *Moss v. Apker*, 376 F. Supp. 2d 416, 424 (S.D.N.Y. 2005) (concluding that the February 2005 Rule represents "a reasonable interpretation of § 3621(b)" and "a lawful exercise of the BOP's discretion under § 3621(b)").

The Court concludes that Judge Howard's decision in *Fults* is well-reasoned and adopts its rationale.  Accordingly, the Court recommends that the February 2005 Rule be held invalid. As Judge Howard recognized in *Fults*, § 3621(b) *requires* the BOP to consider the factors set forth in that statute prior to arriving at a determination of the appropriate facility for a given inmate.  The February 2005 Rule, which incorporates a so-called "categorical exercise of discretion," fails to consider any of those factors in the specific context of deciding an individual prisoner's placement in a CCC.

The Court recommends that the habeas Petition be granted, and Respondent be directed to: (a) consider, within fourteen days and in good faith, transferring Petitioner to a CCC for the remainder of his sentence in accordance with the factors taken into account by the BOP prior to its adoption of the December 2002 Policy and the February 2005 Rule; and (b) place Petitioner in conditions that will afford him a reasonable opportunity to adjust to and prepare for his reentry into the community during a reasonable part of the last ten percent of his term, to the extent practicable,

not to exceed six months.

## IV. Conclusion

IT IS THEREFORE RECOMMENDED that:

1. The Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (docket entry #1) be GRANTED.

2. Respondent shall: (a) consider, within fourteen days and in good faith, transferring Petitioner to a CCC for the remainder of his sentence in accordance with the factors taken into account by the BOP prior to its adoption of the December 2002 Policy and the February 2005 Rule; and (b) place Petitioner in conditions that will afford him a reasonable opportunity to adjust to and prepare for his reentry into the community during a reasonable part of the last ten percent of his term, to the extent practicable, not to exceed six months.

Dated this 29th day of September, 2005.

_____
UNITED STATES MAGISTRATE JUDGE